**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BERNADETTE L.,[1] | Case No. 5:18-cv-00864-AFM |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

 Plaintiff filed this action seeking review of the Commissioner's final decision denying her application for disability insurance benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

**BACKGROUND**

 In October 2014, Plaintiff applied for disability insurance benefits, alleging disability beginning March 1, 2014. Her application was denied initially and on

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

reconsideration. (Administrative Record ["AR"] 305-315, 317-327.) Hearings took place on March 15 and August 10, 2017 before an Administrative Law Judge ("ALJ"). Plaintiff (who was represented by counsel) and a vocational expert ("VE") testified. (AR 287-304.)

In a decision dated September 7, 2017, the ALJ found that Plaintiff suffered from the following severe impairments: right plantar fasciitis, migraine headaches, depression, anxiety, borderline intellectual functioning, and post-traumatic stress disorder. (AR 140.) The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform the following: lift or carry fifty pounds occasionally and twenty-five pounds frequently; stand walk, or sit for six hour in an eight-hour work day; and simple tasks of a reasoning level of two or less with no public contact and no jobs requiring teamwork. (AR 143.) Relying upon the testimony of the VE, the ALJ found that Plaintiff was capable of performing work existing in significant numbers in the national economy. (AR 150.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 151.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-7), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUE

Whether the ALJ properly evaluated the opinion of Plaintiff's treating psychiatrist, Harry Lewis, M.D.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### 1. Relevant Evidence.

Plaintiff does not contest the ALJ's findings regarding her physical impairments. Thus, the following discussion of the record is limited to the evidence relevant to Plaintiff's mental impairments.

<u>Harry Lewis, M.D. (Treating Psychiatrist)</u>

Harry Lewis, M.D., began treating Plaintiff in May 2013. (ECF No. 20 at 5; AR 1157.) Treatment notes from February 2014 (one month before Plaintiff alleged onset of disability) indicate that Plaintiff reported "doing ok." (AR 860.) According to Dr. Lewis's mental status examination, Plaintiff's mood was "mostly euthymic," but the remaining findings were normal. For example, Dr. Lewis found Plaintiff's behavior/manner were pleasant and cooperative; her cognition was alert, clear, and oriented; her motor activity was normal; her speech was normal; and her thought process was coherent, relevant, and logical. Plaintiff reported no side effects from her medication. Dr. Lewis diagnosed Plaintiff with major depression, recurrent, mild. He noted that she was "doing better," her status was "well controlled," and he made no changes to her treatment. (AR 860-861.)

In an April 2014 follow-up, Plaintiff reported that she had been under more stress at work as well as family stressors with her daughter and ex-husband. Dr. Lewis's mental status examination revealed Plaintiff's mood to be "somewhat depressed," but otherwise his findings were normal. He diagnosed Plaintiff with depression, recurrent, moderate. He noted that Plaintiff's prescriptions included

Xanax, Wellbutrin, Prozac, Norvasc, Tenomin, and Ambien. He made no changes to Plaintiff's medication. (AR 892-895.)

The following month, Plaintiff reported that she continued to feel "quite stressed about the changes at work." She told Dr. Lewis that group therapy was "going well." Mental status examination revealed Plaintiff's mood to be "somewhat anxious, somewhat depressed" with an affect congruent to mood. Otherwise, Plaintiff's behavior, cognition, orientation thought process and content were normal. Dr. Lewis made no medication changes and recommended Plaintiff continue with group therapy. (AR 983-984.)

In June 2014, Dr. Lewis noted that Plaintiff found "her group therapy to be quite helpful." She again reported no side effects from her medication. Mental status examination was normal – her thought process was coherent, relevant, logical, she was pleasant and cooperative, alert, clear and oriented – with the exception of a "somewhat depressed" mood and congruent affect. (AR 1015-1017.)

Dr. Lewis's notes from July 2014 also indicate that Plaintiff's mental status examination was normal except for a somewhat depressed mood and affect. (AR 1059-1061.) In August 2014, Dr. Lewis noted Plaintiff's mood was mildly anxious, mildly depressed, but otherwise her mental status examination was normal. He continued Plaintiff's medication and recommended she continue therapy. (AR 1082-1084.) Likewise, at a follow-up appointment in October 2014, Plaintiff reported feeling "a little more depressed" because she was going to court to see her grandson. Noting no side effects, Dr. Lewis prescribed the same medication without changes. Plaintiff's mental status examination was normal with the exception of a "somewhat depressed mood" and congruent affect. (AR 1101-1102.)

In December 2014, Dr. Lewis again found Plaintiff's mood to be mildly depressed with a congruent affect. Her mental status examination was otherwise normal. He did not make any medication changes. (AR 1190-1191.) Dr. Lewis saw Plaintiff again in February 2015. Plaintiff told Dr. Lewis that she was starting to feel

better and hoped to be able to return to work soon. He noted Plaintiff's mood as "less depressed." The remainder of the mental status examination was normal. (AR 1199-1201.)

Treatment records from April, September, October, and November 2015 are substantively identical. Plaintiff's mental status examinations revealed either a "somewhat anxious, somewhat depressed" mood or "mildly anxious, mildly depressed" mood with congruent affect, but otherwise normal findings. Plaintiff's diagnosis remained depressive disorder, recurrent, but was sometimes found to be mild and others found to be moderate. (AR 1487-1488, 1520-1523, 1529-1530, 1555-1556.) In December 2015, Plaintiff reported feeling more depressed, anxious, and easily overwhelmed because her daughter-in-law had left her son for another man. Other than noting Plaintiff's anxious and depressed mood with congruent affect, Dr. Lewis again assessed normal findings based upon his mental status examination. He diagnosed Plaintiff with moderate depression and increased her Prozac dosage. (AR 1562-1563.)

Dr. Lewis's March 2016 mental status examination revealed normal findings except for a mildly anxious, mildly depressed mood with congruent affect. He diagnosed Plaintiff with major depressive disorder, recurrent episode, mild, and panic disorder. He increased Plaintiff's Wellbutrin dosage. (AR 1647-1648.) In June 2016, Dr. Lewis noted Plaintiff's mood to be somewhat anxious and depressed. He also noted her motor activity to be "slightly slowed." The remainder of the mental status examination was normal. Plaintiff's depression diagnosis was stated as moderate and her Prozac dosage was increased. (AR 1655-1657.)

Also in June 2016, Dr. Lewis completed a mental impairment assessment. He noted Plaintiff's diagnoses as depression and panic disorder. In Dr. Lewis's opinion, due to these mental impairments, Plaintiff is unable to meet competitive standards in the following abilities: remember work-like procedures; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform

at a consistent pace without an unreasonable number and length of rest periods; accept instructions and reasons appropriately to criticism from supervisors; deal with normal work stress; and deal with stress of semiskilled and skilled work. In addition, Dr. Lewis opined that Plaintiff is seriously limited in (but not precluded from) the ability to: maintain attention for two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; understand and remember detailed instructions; carry out detailed instructions; set realistic goals or make plans independently of others; and interact with the general public. According to Dr. Lewis, Plaintiff has a limited but satisfactory ability to understand, remember, and carry out simple instructions; make simple work-related decisions; ask simple questions and request assistance; maintain socially appropriate behavior; and travel in an unfamiliar place. Finally, Dr. Lewis opined, "Currently, [Plaintiff's] condition does not allow her to successfully handle the work environment." (AR 1222-1223.)

During her examination in August 2016, Plaintiff reported feeling better. She had reduced her Prozac dosage on her own, and she felt "stable." Dr. Lewis's mental status examination was unremarkable except for her mood, which was "less anxious, less depressed." Plaintiff was diagnosed with panic disorder and major depressive disorder, recurrent episode, mild. Dr. Lewis noted that Plaintiff was "doing better" and made no medication changes. (AR 1692-1694.) In March and June 2017, Dr. Lewis's findings were again unremarkable but for her mood, which was either "mildly" or "somewhat" anxious/depressed. (AR 1744-1745, 1764-1765.)

<u>Psychotherapy</u>

Plaintiff participated in numerous group therapy sessions. Generally, Plaintiff's goal was to develop coping skills to prevent relapse. Her progress was most frequently noted to be "fair," but sometimes "better." (AR 902, 909, 919, 923, 937, 944, 958, 965, 972, 975, 994-995; 1001-1002, 1009-1010, 1028, 1032, 1039, 1046, 1053, 1069, 1076, 1576, 1582, 1588, 1594, 1600, 1606, 1613, 1619, 1625.)

She also participated in individual therapy. During her March 27, 2014 session with Rosa Inez Winter, LCSW, Plaintiff complained of anxiety and depression. She reported "having issues with her daughter who is addicted to drugs." She also reported having "issues at work" because the doctor she worked for was verbally disrespectful to her. (AR 884.) Plaintiff said she was crying "almost every day," and had trouble sleeping. She was noted to appear tearful and anxious. Plaintiff was diagnosed with major depression, recurrent, moderate. (AR 884-885.)

In a September 2014 individual therapy session, Plaintiff was noted as continuing to suffer depression primarily due to family stressors related to her daughter who was homeless and her grandson, who she had not seen for months. Plaintiff was observed to be "doing better" and as having made good progress toward her goals. (AR 1092.) Plaintiff was "generally functioning pretty well," she "had some meaningful social relationships." (AR 1093.)

During her November 2014 individual therapy session, Plaintiff reported feeling happy because her daughter was finally in rehabilitation, while her anxiety was heightened because she worried her daughter might leave the program prematurely. Plaintiff also expressed anxiety about having to return to work. (AR 1110-1111.) In July 2015, Plaintiff presented with anxiety and depression. She was observed to be "tearful, stressed, and hurt." (AR 15071-1508.)

In February 2016, Plaintiff was observed to be less depressed and her progress toward her functional goals was "better." (AR 1631.) Notes from August 2016, indicate that Plaintiff was "much better" and there was "[n]or really [sic] sign of

depression." Her diagnosis was major depression, recurrent, in partial remission. (AR 1686.) Plaintiff was noted to be making good progress in October 2016. (AR 1700.) In January, March, and April 2017, Plaintiff was tearful due to worries about how to help her daughter. (AR 1730, 1737, 1757.)

Dr. Zhang

J. Zhang, Psy.D., performed a consultative psychological evaluation of Plaintiff in September 2016. Dr. Zhang's report states that Plaintiff reported a history of depression, anxiety, and migraine headaches, with symptoms onset around 2004 after a divorce. Plaintiff also reported a history of learning problems. According to Plaintiff, she had received mental health care since 2004 with "mediocre results." She currently was prescribed Wellbutrin, Prozac, Xanax, and Ambien. (AR 1211.)

Plaintiff told Dr. Zhang that she lived with her son and her relationship with her family was fair. She was able to take care of her grooming and hygiene needs, able to drive, go out alone, and prepare simple meals. Plaintiff reported having some difficulty completing household tasks because of lack of motivation and energy, and reported difficulty making daily decisions and planning daily activities. (AR 1212.)

A mental status examination revealed Plaintiff to be reasonably cooperative, oriented, her speech was clear and reasonably articulate, and she did not appear to be responding to internal stimuli. Plaintiff's mood was mildly anxious and depressed with constricted affect. (AR 1212.) Dr. Zhang noted that Plaintiff showed fair judgment but poor insight. (AR 1213.)

Psychological testing revealed Plaintiff to be functioning in the borderline range of intelligence with a full-scale IQ score of 72, and Plaintiff's memory capacity was mildly impaired. In addition, Plaintiff performed below average on a test designed to measure sustained attention, visual search, and psychomotor efficiency. (AR 1214-1215.)

Dr. Zhang diagnosed Plaintiff with borderline intellectual functioning and post-traumatic stress disorder. In Dr. Zhang's opinion, Plaintiff is (a) not impaired in

her ability to understand, remember, and carry out simple instructions or her ability to make judgments on simple work-related decisions; (b) moderately impaired in her ability to understand, remember, and carry out detailed and complex instructions; her ability to maintain concentration, persistence, and pace; her ability to maintain consistent attendance and to perform routine work duties; and her ability to respond appropriately to usual work situations and changes in a routine; and (c) mildly impaired her in ability to interact appropriately with co-workers, supervisors, and the public; and her ability to perform work activity without special or additional supervision. (AR 1215-1218.)

<u>State Agency Physicians</u>

State Agency physicians Brady Dalton, Psy.D., and Dan Funkenstein, M.D., reached the same conclusions about the functional limitations caused by Plaintiff's mental impairment. Specifically, both opined that Plaintiff suffered various limitations as a result of her mental impairments, but retained the ability to complete simple instructions, follow directions without additional assistance, and maintain adequate attention, concentration, persistence and pace as needed to complete a full work day/work week. In addition, both opined that Plaintiff is able to interact with co-workers and supervisors on a superficial and non-collaborative basis, and capable of brief public contact. (AR 311-313, 323-325.)[2]

**2. The ALJ's Decision.**

In assessing Plaintiff's RFC, the ALJ discussed the medical evidence and medical opinions, including Dr. Lewis's opinion regarding Plaintiff's mental limitations and the opinions of Drs. Zhang, Dalton and Funkenstein. (*See* AR 141-148.) The ALJ specifically discussed Dr. Lewis's treatment notes from February, June, and October 2014; February and December 2015; March, June, and August 2016; and March and June 2017. The ALJ's decision repeatedly emphasized that

---

[2] Both opinions were rendered prior to the date on which Dr. Lewis provided his mental impairment functional assessment.

Dr. Lewis's mental status examinations were essentially normal. For example, the decision notes Dr. Lewis's findings that Plaintiff exhibited normal motor activity, coherent, relevant, and logical thought process, no psychotic or inappropriate thought content, no perceptual disturbances, and no suicidal or homicidal ideation. The only notable findings in Dr. Lewis's treatment records were Plaintiff's mood and affect which was variously described as mild or "somewhat" depressed and/or mild or "somewhat" anxious. (*See* AR 144-148.) The ALJ found significant that Plaintiff had a history of consistently unremarkable mental status examinations which "fail to document significant abnormalities." (AR 146.) She also noted the consistent statements by Dr. Lewis that Plaintiff suffered no side effects from her medication. The ALJ also discussed evidence of Plaintiff's psychotherapy. (AR 144-147.)

After reviewing the record, the ALJ found that Dr. Lewis's assessment was not supported by Plaintiff's treatment history (AR 147) and notably lacked support in Dr. Lewis's "own contemporaneous treatment records, which fail to document significant abnormalities." (AR 146.)

The ALJ gave some weight to Dr. Zhang's assessment, concluding that the record of Plaintiff's described difficulties in relationships documents a greater limitation on interacting with others than Dr. Zhang imposed. (AR 147.)

The ALJ afforded significant weight to the opinions of Dr. Dalton and Dr. Funkenstein, finding them generally consistent with the medical evidence, including Plaintiff's treatment history. (AR 147.)

**3**. **Analysis.**

The RFC is the most a claimant can still do despite his or her limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996) (citing 20 C.F.R. § 404.1545(a)). In determining a claimant's RFC, an ALJ must consider all relevant evidence of record, including medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see* 20 C.F.R. § 404.1527(b). Before rejecting the uncontradicted opinion of a treating

or examining physician, an ALJ must provide clear and convincing reasons for doing so. *Hill v. Astrue*, 698 F.3d 1153, 1159-1160 (9th Cir. 2012); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Hill,* 698 F.3d at 1160 (quoting *Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1298-1299 (9th Cir. 1999)). An ALJ meets the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citations and internal quotation marks omitted). Because Dr. Lewis's opinion was contradicted by the opinions of Dr. Zhang and by the State agency physicians, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence before rejecting it.

An ALJ may properly reject a treating physician's opinion on the ground that it is unsupported by the physician's own findings and inconsistent with the record as a whole. *See Tommasetti*, 533 F.3d at 1041 (inconsistency with objective medical evidence); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (lack of support by clinical findings). Thus, the ALJ could properly reject Dr. Lewis's extreme limitations as inconsistent with the record as well as his own treatment notes which at most, reflect mild to moderate depression and/or anxiety.

Plaintiff also argues that the ALJ's decision was erroneous because she improperly isolated portions of the record. In support of this contention, Plaintiff points out the following: (1) the ALJ cited some of Dr. Lewis's treatment records, but "missed" records in which Dr. Lewis assessed "somewhat depressed mood and congruent affect"; (2) the ALJ cited treatment notes from one psychotherapy visit in June 2014, but failed to discuss four other psychotherapy visits during the same month; (3) although the ALJ discussed treatment notes from October 2014 through March 2016, the ALJ failed to note that during those months, Plaintiff was attending

psychotherapy; and (4) the ALJ failed to address Dr. Zhang's finding that Plaintiff was unable to correctly interpret two proverbs. (ECF No. 20 at 8-10.)

Plaintiff is correct that an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his or her findings. *See Holohan v. Massanari*, 246 F.3d 1195, 1207-1208 (9th Cir. 2001). At the same time, an ALJ is not required to "discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Here, the ALJ accurately summarized the medical evidence. None of the evidence cited by Plaintiff undermines the ALJ's characterization of the record. Rather, the evidence cited by Plaintiff is substantively the same as the evidence that the ALJ discussed in detail, including identical mental status examination findings by Dr. Lewis. Furthermore, the ALJ's decision does not implicitly minimize the frequency of Plaintiff's psychotherapy. The ALJ did not materially mischaracterize the record simply because she failed to mention each time Plaintiff participated in therapy. Finally, an inability to interpret proverbs would suggest a limitation in reasoning or abstract thinking. *See Dykes v. Berryhill*, 2017 WL 5625994, at *5 (W.D. Wash. Nov. 22, 2017). The ALJ's RFC already included a limitation to simple tasks requiring a reasoning level of two or less. (AR 143.) Plaintiff has not explained how Dr. Zhang's finding that Plaintiff was unable to correctly interpret two proverbs should be considered evidence supporting Dr. Lewis's assessment. In fact, Dr. Zhang's findings led to an opinion that Plaintiff's limitations were far less extreme than Dr. Lewis assessed. Thus, Plaintiff has not shown that the ALJ isolated portions of the record or failed to discuss material evidence supporting her claim of disability.

Plaintiff argues that the ALJ failed to recognize that "despite having been on medication and having psychotherapy, Dr. Lewis continued to assess [Plaintiff] with Depression, recurrent, moderate." (ECF No. 20 at 9.) The ALJ acknowledged and adopted Dr. Lewis's diagnoses. But a diagnosis does not constitute conclusive

support for the extreme disabling limitations opined by Dr. Lewis. Indeed, "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *see Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985); *Nicholl v. Berryhill*, 2018 WL 3702296, at *7 (C.D. Cal. Aug. 2, 2018) ("the mere existence of major depression and anxiety does not provide conclusive support for the extreme disabling limitations opined by [plaintiff's physician]").

In sum, the ALJ's interpretation of the record is reasonable, and the Court will not engage in second-guessing. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). It follows that the ALJ permissibly rejected Dr. Lewis's opinion on the ground that it was unsupported by his own treatment notes and the record as a whole. *See, e.g.*, *Dupre v. Berryhill*, 2019 WL 1418492, at *1 (9th Cir. Mar. 28, 2019) (ALJ permissibly relied upon the inconsistency between treating physician's opinion regarding limitations and her findings that the "fairly normal mental status examination"); *Petrini v. Berryhill*, 705 F. App'x 511, 512 (9th Cir. 2017) (ALJ provided sufficiently specific and legitimate reason for rejecting physician's opinion of marked mental limitations where mental status evaluation was "fairly normal"); *Garcia v. Berryhill*, 2018 WL 4382988, at *3 (C.D. Cal. Sept. 12, 2018) (ALJ properly rejected examining psychologist opinion on ground it was not consistent with physician's "minimal findings on the mental status examinations"); *Castaneda v. Colvin,* 2014 WL 3732128, at *4 (C.D. Cal. July 28, 2014) (ALJ properly rejected treating physician's opinion that claimant had poor ability to perform simple tasks when mental status examinations mention only depression and anxiety, but failed to mention deficits in concentration, attention or memory).

Plaintiff further argues that the ALJ erred by giving significant weight to the opinions of the non-examining State agency physicians. In support of this argument, Plaintiff cites *Orn*, 495 F.3d at 632, for the proposition that "when a non-examining physician relies upon the same clinical findings as a treating physician, the

conclusions of the non-examining physician are not substantial evidence." (ECF No. 20 at 10.)

Plaintiff is correct that the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of ... a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (citations omitted). But the ALJ did not simply reject Dr. Lewis's opinion in favor of the contradictory opinions of the Stage agency physicians. Rather, as discussed above, the ALJ provided specific and legitimate reasons for rejecting Dr. Lewis's opinion independently of the weight she assigned to the State agency physicians' opinions. Furthermore, the opinion of a non-examining physician may serve as substantial evidence when it is supported by other evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Consequently, the ALJ was entitled to rely upon the opinions of the State agency physicians.

Finally, Plaintiff contends that the ALJ erred because she failed to discuss each of the factors relevant to assessing the weight of Dr. Lewis's opinion. (ECF No. 20 at 11, citing *Trevizo*.) In *Trevizo*, the Ninth Circuit discussed the ALJ's obligation to consider a physician's opinion "according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo*, 871 F.3d at 675 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). It held that the ALJ's failure to consider these factors constitutes reversible legal error. *Trevizo*, 871 F.3d at 676.

Courts applying *Trevizo* have concluded that it "does not demand a full-blown written analysis of all the [§ 404.1527(c)] factors; it merely requires some indication that the ALJ considered them." *Lisa R. S. H. v. Berryhill*, 2018 WL 3104615, at *5 (C.D. Cal. June 21, 2018) (quoting *Hoffman v. Berryhill*, 2017 WL 3641881, at *4 (S.D. Cal. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 4844545

(Sept. 14, 2017); see also, *Huddleston v. Berryhill*, 2018 WL 2670588, at \*10 (C.D. Cal. May 31, 2018). Here, the ALJ recognized that Dr. Lewis was Plaintiff's treating physician and thoroughly reviewed his treating notes and opinion. Unlike the ALJ in *Trevizo*, the ALJ here gave specific, legitimate reasons for discounting the treating physician's opinion. The ALJ's decision evidences that she considered the length of the treating relationship and the inconsistency of Dr. Lewis's opinion with the record. Because it is evident that the ALJ adequately considered Dr. Lewis's opinion, her failure to explicitly recite each of the regulatory factors in her decision did not constitute legal error. See *Lisa R. S. H. v. Berryhill*, 2018 WL 3104615, at \*6.

## ORDER

For the foregoing reasons, IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 5/28/2019

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE